**LEADMAN v. QUERBES.***

**No. 5150.**

Court of Appeal of Louisiana. Second Circuit.

Nov. 6, 1935.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Albert P. Garland, of Shreveport, for appellant.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellees.

DREW, Judge.

This suit is without merit in law, and opposed to all principles of equity and fair dealing. The lower court, in a written opinion, has rejected the demands of plaintiff, and, while we might elaborate and go into a more detailed discussion of the case than the lower court has, we find it unnecessary, as the lower court's opinion correctly decides the case.

We therefore affirm the opinion of the lower court and adopt it. It is as follows:

"On September 11, 1926, H. J. Tieuel executed a note in the sum of $700 in favor of Mrs. Alexandrine Querbes, payable on or before two years from date, bearing 8 per cent. per annum interest from date, and 10 per cent. attorney's fees on the principal and interest in the event of suit for collection.

"On February 19, 1930, plaintiff, acting through his natural tutrix, acquired the note from Mrs. Querbes, for the sum of $700, which was paid by check of that date. At the time of the purchase by plaintiff, Andrew Querbes indorsed the note 'Mrs. Alexandrine Querbes by A. Querbes,' and at said time it bore the following additional indorsements:

"'Nov. 8, 1928, interest paid to Nov. 10, 1928, and note extended to Jan. 2, 1929.

"'Jan. 7, 1930, interest paid to Jan. 2, 1929, and note extended to Jan. 2, 1930, with interest payable semi-annually.

"'Feb. 11, 1930, interest paid to Feb. 19, 1930, and note extended to August 19, 1930.'

[redacted]

*Rehearing denied Dec. 13, 1935.

"Subsequent to its acquisition by plaintiff, the following indorsements appear to have been inscribed on the back of the instrument:

" 'Sept. 2, 1930, interest paid to Aug. 19, 1930, and note extended to Feb. 19, 1930.

" 'Feb. 26, 1931, int. paid to Feb. 19, 1931, and note extended to Aug. 19, 1931.

" 'Nov. 12, 1931, int. paid to Nov. 12, 1931, and note extended to May 12, 1932.

" 'July 27, 1932, int. paid to Feb. 17, 1932.

" 'Nov. 17, 1932, int. paid to Mar. 20, 1932.'

"On the date of the transfer of the note to plaintiff, it was delivered for collection to the bank, of which Mr. Querbes was and is president.

"On December 10, 1933, the maker of the note having paid nothing on the principal and no interest since March 20, 1932, the plaintiff, acting through his tutrix, instituted a suit on the note against him and obtained judgment. The mortgage security was sold under execution pursuant to the judgment to the Leadman Realty Company for $250, the costs were deducted, and the judgment was credited with $185.19.

"The purpose of this suit, which was instituted by plaintiff after his emancipation, is to recover from Andrew Querbes, and, in the alternative, Mrs. Alexandrine Querbes, wife of Andrew Querbes, the deficiency resulting from the mortgage foreclosure.

"It was conclusively shown during the trial of the case that the note at the time of its indorsement and negotiation by Mrs. Querbes was her separate and paraphernal property, and, as Andrew Querbes is sued only upon the theory of his responsibility as the head and master of the community existing between him and his wife, to which community the note is alleged to have belonged, he will not be further discussed or referred to as a party defendant. Mrs. Querbes is sued as indorser of the note; her indorsement thereon being admitted.

"The defenses relied upon are:

"(1) The want of notice of dishonor for nonpayment at maturity.

"(2) The extension of the note without the consent of the endorser.

"The plaintiff concedes that ordinarily, in order to hold an indorser liable on a negotiable instrument, it is necessary that the indorser be given notice of dishonor for nonpayment, but contends that, if the indorser holds possession of the note for collection, either personally or through an agency, as in this case, such notice is unnecessary.

"We agree with this statement of the law, and it is our opinion that it is applicable to the facts herein presented. Andrew Querbes was the agent for his wife with reference to the transaction involved. He was likewise the chief executive officer of the bank which held the note for collection. His position was such that his order or mere suggestion may have caused the indorser, whom he represented as agent, to be discharged. It is immaterial that he did not exercise the authority with which the circumstances vested him. It is sufficient to sustain the reason for the rule contended for and demonstrate its wisdom that he was in a position to do so.

"The indorser should therefore be held, unless she was discharged by the extension of the note without her consent.

"The plaintiff, while not contending that the extension of the time for payment of a note without the consent of the indorser ordinarily does not discharge the indorser, meets this issue by asserting:

"(1) The extensions indorsed on the note subsequent to his having acquired it were unauthorized, and therefore ineffective.

"(2) If authorized, said extensions were without consideration, and therefore without legal efficacy.

"On the question of fact presented by the first proposition, we must conclude that the extensions were authorized. Pat Hutchinson, note teller of the bank, a witness for the plaintiff, testified that Mrs. Leadman (Mrs. Brewster at the time of trial), former tutrix of plaintiff, left the note with him for collection, with instructions to collect the interest when due, and extend the maturity date of the principal; that, upon the several occasions when he indorsed the acknowledgment of the receipt of interest on the note and extended the maturity thereof, he was authorized to do so by Mrs. Leadman; that such authorizations were given by her orally, either by telephone or at his window in the bank; that he could not recall any occasion when he refused to grant Tieuel an extension until he had seen Mrs. Leadman.

"Mrs. Brewster (formerly Mrs. Leadman, and tutrix), a witness for plaintiff, denied that she authorized any extensions of the maturity of the note.

"If we disregard utterly the testimony of Tieuel, witness for defendant, that on one or two occasions Mrs. Leadman granted an extension of the note, we are confronted with this situation: The plaintiff presents us with two witnesses, vouches for the credibility of both, and would have us give credence to the one who testifies in his behalf and deny it to the one who testifies against him. Of course, it may be contended that Hutchinson, an employee of the bank, was a hostile witness because the suit is against the president of the bank and his wife, but Hutchinson was not impeached and was not subject to impeachment: A party cannot impeach a witness whom he has introduced unless it is shown that he was entrapped by such witness or surprised by his testimony. There is no such showing here. Hutchinson's testimony must be accepted.

"In support of plaintiff's contention that the extensions, if granted, were without consideration or binding effect, he cites Huie v. Bailey, 16 La. 213, 218, 35 Am. Dec. 214; John M. Parker & Co. v. Guillot, 118 La. 223, 226, 42 So. 782.

"In the instant case, the extensions were granted by indorsement on the back of the instrument, fixing a definite date for maturity. In the first cited case, the acceptors of a bill were permitted by the holder to go to Texas upon the promise to pay on their return. In the second cited case, the maker of a note was granted delay for payment upon his request as a favor at a time when the holder was urging settlement.

"The distinction between the case before us and the cited cases is obvious. In the present case, the extensions were granted to a definite date, upon the same consideration which served as a basis for the execution of the original agreement; the extensions being binding upon all parties to the instrument. In the cited cases, the extensions were merely forbearances or indulgences without consideration from which all parties could immediately withdraw. In the present case the extensions, if made without the consent of the indorser, may have prejudiced her rights to pursue her remedy. In the cited cases the extensions could have prejudiced no one's rights.

"We do not think the cited cases support the contention that, in order to enter into a binding agreement to extend the maturity of a note, some additional consideration must pass which was not contemplated by the original parties to the instrument, except where the extension granted was a mere indulgence.

"The jurisrudence of this state, in line with the weight of authority of the United States, is to the effect that the same character of consideration supports a definite extension of the date of maturity, and that both are equally binding.

"The evidence shows that the extensions were granted without the consent of the defendant. She was therefore discharged as an indorser. There should be judgment rejecting plaintiff's demands.
"J. H. Stephens,
"Judge, First District Court."

The judgment appealed from is affirmed.